

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**BLUE CROSS & BLUE SHIELD**                                  **PLAINTIFF**
**OF MISSISSIPPI, A MUTUAL INSURANCE COMPANY**

**VS.**                                  **CIVIL ACTION NO.** 3:22-cv-58-DPJ-FKB

**COAST DIAGNOSTICS, LLC**                                  **DEFENDANT**

---

**BLUE CROSS & BLUE SHIELD OF MISSISSIPPI, A MUTUAL INSURANCE
COMPANY'S COMPLAINT AGAINST COAST DIAGNOSTICS, LLC**

---

Plaintiff Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company ("Blue Cross"), files this Complaint against Coast Diagnostics, LLC ("Coast"), seeking a declaratory judgment that Blue Cross and Coast entered into a valid and enforceable agreement to settle all disputes between them related to claims asserted by Coast, and for injunctive relief to enforce the terms of the parties' agreement. Notwithstanding the settlement reached between the parties, Coast is now attempting to go forward with its claims against Blue Cross. For the reasons stated below, the settlement agreement between the parties is valid and should be enforced.

## PARTIES

1.      Plaintiff Blue Cross is a mutual insurance company organized under the laws of Mississippi with its principal place of business in Flowood, Mississippi.

2.      Coast Diagnostics, LLC is an Alabama limited liability company whose address is 4674 Airport Blvd. Suite C, Mobile, Alabama, 36608, who may be served with process through its registered agent, Brian Ward, at 4636 Bitt & Spur Road, Suite A, Mobile, Alabama  36608.

1

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties.  Plaintiff is a citizen of the State of Mississippi, and Defendant is a citizen of the State of Alabama. The amount in controversy exceeds $75,000.00.

4.      The Court, sitting in diversity, has personal jurisdiction over Coast because Coast made a contract with a resident of this state to be performed in whole or in part by a party in this state consistent with Mississippi's long-arm statute, Miss. Code Ann. § 13-3-57, and personal jurisdiction under such statute is consistent with due process under the U.S. Constitution.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because substantial alleged acts or omissions giving rise to Blue Cross's claims against Coast occurred in this judicial district. Among other things, Coast entered into the settlement agreement with Blue Cross in this judicial district.

## FACTUAL BACKGROUND

6.      In late 2019 and early 2020, the World Health Organization and the United States Centers for Disease Control identified a novel coronavirus that resulted in a highly transmissible and potentially deadly virus that came to be known as COVID-19.   Researchers around the world utilized data from the genetic sequences of the virus to develop tests for the virus in early 2020.  During 2020 and 2021, millions of COVID-19 tests were manufactured and used to test individuals for the COVID-19 virus.

7.      Coast is a clinical laboratory located in Mobile, Alabama, but is not a network provider within the Blue Cross independent laboratory network.  Coast provided services related

2

to COVID-19 testing of certain Blue Cross Members in 2020, and submitted claims for reimbursement to Blue Cross in connection with its testing services.

8.      Because Coast is an out-of-state non-network provider, Blue Cross remitted payment for some claims for Coast's services to its Members pursuant to the Members' health and wellness benefit plans with Blue Cross.

9.      On June 24, 2021, Brian E. Dickerson, an attorney for Coast, delivered a letter to Blue Cross demanding payment in the amount of $588,783.69, claiming this amount was "currently due, owing and payable by [Blue Cross] to Coast for COVID-19 laboratory diagnostic services performed since the 2020 calendar year for [Blue Cross] members." A copy of Coast's June 24, 2021 letter is attached as "Exhibit 1" (the "June 24 Demand Letter"). The June 24 Demand Letter further asserted that the Coronavirus Aid, Relief and Economic Security Act of 2020 (the "CARES Act") and the Families First Coronavirus Response Act of 2020 (the "FFCRA") required Blue Cross to make payments for COVID-19 testing services directly to Coast rather than submitting reimbursement payments to its Members in accordance with the requirements of the Members' plans for reimbursements related to out-of-state, non-network provider claims.

10.     On July 22, 2021, Blue Cross responded in writing to the June 24 Demand Letter, disputing Coast's contentions that reimbursements should be submitted directly to it under the CARES Act and FFCRA, and explaining it followed the proper reimbursement direction of its Members plans. A copy of Blue Cross's response is attached as "Exhibit 2" (the "July 22 Response"). Blue Cross further disputed Coast's contention of the pricing for tests approved by the CARES Act and the FFCRA, and asserted it had properly reimbursed its Members based on the appropriate test pricing established under the CARES Act and the FFCRA. Blue Cross

3

concluded its response asserting (1) it had "complied with the FFCRA and the CARES Act in adjudicating claims for COVID-19 diagnostic testing submitted by Coast;" (2) that it "does not owe any monies to Coast regarding COVID-19 diagnostic testing claims;" and (3) that it "will continue to remit payment for claims submitted by Coast to the Member unless there is a valid assignment of benefits indicated on the claim." *See* Exhibit 2.

11.     Over the following months, counsel for Coast and Blue Cross engaged in extensive communications concerning the parties' positions with respect to the requirements of the CARES Act and FFCRA and specific claim related issues, all in an effort to resolve the dispute.  In those discussions Blue Cross identified a significant number of claims that had been submitted by Coast that were rejected or otherwise denied, and thus no benefits were due for services related to many filed claims.  Furthermore, Coast identified that it had received payments from Blue Cross members related to a significant number of claims and, thus, it was no longer owed monies on those claims.  As part of these ongoing discussions Blue Cross provided Coast with complete and extensive claims data for every claim submitted by Coast to Blue Cross. *See* October 28, 2021 Correspondence attached as "Exhibit 3."

12.     After extensive discussions with Blue Cross and after receiving and investigating the extensive claims data on each claim submitted by Coast to Blue Cross, on November 30, 2021, counsel for Coast made a second demand on Blue Cross stating:

> Coast's further investigation has determined that the amount of **$258,448.27** is due and owing by [Blue Cross] to Coast in reference to claims that were (a) submitted by Coast to [Blue Cross] for COVID-19 diagnostic testing services provided by Coast to [Blue Cross] members; (b) not paid by [Blue Cross] to Coast; (c) not rejected claims; and (d) paid by [Blue Cross] to its members directly in violation of Section 3202 of the CARES Act.

*See* November 30, 2021, attached as "Exhibit 4."

4

13.     In furtherance of the parties' efforts to resolve the dispute, Blue Cross and counsel for Coast resumed discussions on or about December 17, 2021, at which time Blue Cross countered Coast's November 30 demand with a settlement offer of $180,000.00.  In those discussions, counsel for Coast countered to Blue Cross that Coast may agree to Blue Cross's counteroffer if Blue Cross agreed to admit Coast into the Blue Cross network.  After a review of its laboratory network needs, on December 21, 2021, Blue Cross informed counsel for Coast that it's laboratory network was closed as it had sufficient network access, and thus it could not admit Coast to the Blue Cross network.  Nevertheless, Blue Cross reiterated its settlement offer.  *See* Exhibit 5, Collective E-Mail exchange.

14.     On December 22, 2021, counsel for Coast informed Blue Cross that Coast would not accept Blue Cross's counteroffer, and reiterated Coast's demand in the amount of $258,448.27.  In addition, Coast's counsel stated "[a]s part of any settlement, my client will assign you all rights to collect from your beneficiaries for the amounts owed for the testing." *See* Exhibit 5.  Later that same day, Blue Cross accepted, stating "[w]e agree to pay the approximately $258,000 amount and will be in touch next week regarding settlement/release and assignment of your collection rights." *See id.*.

15.     At the request of Coast's counsel, Blue Cross prepared a proposed Full and Final Settlement, Release and Confidentiality Agreement ("Settlement Agreement") and forwarded the same to counsel for Coast on December 29, 2021.  *See* Exhibit 6.  That same day Coast's counsel made minor revisions to the Settlement Agreement and returned it to Blue Cross.  *See* Exhibit 7.  Thereafter, while Blue Cross was working to finalize language for the Settlement Agreement, on January 21, 2022, counsel for Coast wrote to Blue Cross demanding an increased settlement payment of $462,027.72.  *See* January 21, 2022 Correspondence attached as "Exhibit 8."

16.     Coast contended in its January 21 Correspondence that on January 7, 2022, its billing and claims processing company obtained access to an unidentified online claims portal for Blue Cross, and that based on that unidentified online claims portal, Coast increased its demand from its previous offer of $258,448.27, which Blue Cross accepted and for which the parties agreed to settle and release all claims, to $462,027.72.

17.     On February 4, 2022, Blue Cross responded to Coast's January 21 letter, stating that the matter has been settled, and Coast's increased demand is unacceptable. *See* February 4, 2022 Correspondence attached as "Exhibit 9." That same day, counsel for Coast responded, claiming there is no settlement agreement between the parties. *See id.*

18.     Coast's purported basis for increasing its demand in its January 21 letter is pure subterfuge.  At all times during the parties negotiations and in arriving at the agreed upon amount of $258,448.27, Coast had access to its own claim submission data.  Moreover, Coast was provided and, by its own admission analyzed, the extensive claims data provided by Blue Cross for every claim submitted by it to Blue Cross, including data from Blue Cross identifying rejected or denied claims, and its own data reflecting payments it received from Blue Cross Members.  Based on this data and the parties' negotiations, Coast reduced its initial demand of $588,783.69 to $258,448.27.

19.     Blue Cross accepted Coast's offer to resolve and settle all claims submitted by Coast to Blue Cross that were not rejected claims and that were paid by Blue Cross to its members and not directly to Coast in exchange for the payment of $258,448.27 and an assignment of Coast's collection rights.  All material terms were agreed upon, and Blue Cross stands ready to fulfill its obligation in the Settlement Agreement to pay the agreed upon amount.

Therefore a valid and enforceable settlement contract exists between Blue Cross and Coast on these terms, and Blue Cross is entitled to have its contract enforced.

## COUNT ONE
### (Declaratory Judgment and Injunctive Relief)

20.     Blue Cross repeats the previous allegations of this Complaint.

21.     The enforceability of settlement agreements in diversity cases is governed by principles of state law applicable to contracts generally. Mississippi applies contract law to negotiated settlement agreements. Under Mississippi law, generally, an enforceable contract consists of an offer, an acceptance of that offer, and consideration. In order for a contract to be valid, six elements must be present: (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.

22.     The parties' offer and acceptance are described in detail above. To reiterate, Coast made its initial demand for payment of $588,783.68 on June 24, 2021. The parties engaged in extensive discussions for several months concerning their different interpretations of the CARES Act, as well as the total amount of claims at issue given rejected claims and claims for which Coast had received payments from Blue Cross Members.  To that end, claims data was provided to Coast on or about November 1, 2021. On November 30, 2021, Blue Cross received a letter from counsel for Coast noting that "Coast's further investigation has determined that the amount of $258,448.27 is due and owing." Blue Cross counteroffered $180,000.00 to settle the dispute, and in furtherance of settlement, the parties engaged in settlement negotiations concerning Coast's request to be made a part of Blue Cross's network.  Because Blue Cross was unwilling to make Coast a network provider, Coast rejected Blue Cross's counteroffer and renewed its demand for payment of the full $258,448.27 claimed due and owing.  To resolve this dispute,

Blue Cross accepted Coast's offer and turned to finalizing the written settlement agreement. The parties' settlement was based on Blue Cross claims data and Coast claims data. All relevant data was reviewed. Certainly Coast had access to determine what it billed to BCBSMS without purportedly referencing other sources.

23.     Blue Cross and Coast had legal capacity to make a contract. They were each represented by counsel, and counsel had authority and the legal capacity to enter into the settlement agreement. There can be no dispute that there are two parties to the settlement: Blue Cross and Coast. The purpose of the settlement was to fully and finally resolve Coast's claims against Blue Cross such that no other amounts would be due for the claims made against Plaintiff. At all relevant times, Blue Cross and Coast have been represented by counsel. Here, the attorneys for Blue Cross and Coast had authority to discuss settlement and enter into a binding settlement agreement on behalf of their clients.

24.     Sufficient consideration exists for an agreement that is sufficiently definite. As discussed above, the parties agreed that Blue Cross would pay Coast $258,448.27 for settlement for all claims. A sum of money in exchange for a release of claims with prejudice is adequate consideration. And the terms were sufficiently definite, i.e., payment of a certain amount in exchange for a dismissal of the suit.

25.     Mutual assent to the agreement exists. Coast agreed to accept, and Blue Cross agreed to pay $258,448.27 to settle all claims made by Coast. Despite Coast's position now that the parties never agreed upon the claims that would be subject to the release, the actions of the parties and their attorneys described above clearly demonstrate that a binding settlement agreement was reached. The parties, represented by counsel, engaged in settlement negotiations by email. Each side had the opportunity during these email exchanges to include any and all

terms they deemed material to settling the case. There were multiple communications between Blue Cross's counsel and Coast's counsel concerning the fact that a settlement had been reached. Reading all of the emails as a whole, there was clearly an agreement reached. In other words, there was a meeting of the minds.

26.     There is no legal prohibition precluding the contract formation. In Mississippi, settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits. The settlement agreement reached in this case is exactly the kind and type the Courts encourage: a sum of money paid to one party in exchange for the dismissal of all claims by the other party. Therefore, the settlement agreement is valid.

27.     There is no fraud, mistake or overreaching in the formation of the agreement. Coast reached out to Blue Cross with an offer to settle all claims made by Coast against Blue Cross. Blue Cross agreed to pay the amount agreed upon by the parties. There was no mistake as to what was being settled: all claims were being settled so that the agreed-upon sum was the only amount ever due and owed by or on behalf of Blue Cross for the claims made against it. Therefore, the settlement should be enforced.

## DEMAND FOR JURY TRIAL

28.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Blue Cross hereby demands a trial by jury.

## REQUEST FOR RELIEF

29.     Blue Cross prays for a declaratory judgment that the settlement agreement between the parties is valid and enforceable.

30.     Blue Cross prays that the Court award injunctive relief in the form of requiring

Coast to comply with the terms and obligations of the parties' agreement.

31.     Blue Cross pray for an order granting such other and further relief as the Court

may deem just and proper.

Dated:  February 7, 2022.

Respectfully Submitted,

**BLUE CROSS & BLUE SHIELD OF
MISSISSIPPI, A MUTUAL INSURANCE
COMPANY**

By: _____
        One of Its Attorneys

Of Counsel:

**Brunini, Grantham, Grower & Hewes, PLLC**
James A. McCullough II (MSB No. 10175)
jmccullough@brunini.com
Karen E. Howell (MSB No. 102243)
khowell@brunini.com
Post Office Drawer 119
Jackson, Mississippi  39205
The Pinnacle Building
190 East Capitol Street, Suite 100
Jackson, Mississippi  39201
Telephone:  (601) 948-3101
Telecopier:  (601) 960-6902